CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 23 2018

JULIA C. DUDLEY, CLERK
BY: /s/ A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

IN RE:                                )
                                      )
VOLUNTARY DISCLOSURES                 )     By: Hon. Michael F. Urbanski
IN FIFTY-FIVE CLOSED CASES            )     Chief United States District Judge
                                      )

## MEMORANDUM OPINION

Before the court are nonparty Craig Frye's Motion to Seal Exhibit's [sic] Attached to His Reply in Support of His Motion to Intervene ("Motion to Seal Exhibits"), ECF No. 44,[1] and Motion to Seal Frye's Reply in Support of Motion to Intervene (the "Motion to Seal Reply," and collectively with the Motions to Seal Exhibits, the "Motions to Seal"), ECF No. 47, and nonparty BH Media Group, Inc.'s ("BH Media") Petition for Leave to Intervene and Oppose Sealing Motion ("Motion to Intervene" or "BH Media Mot. Intervene"), ECF No. 57.[2] For the reasons stated below, the court will **DENY** Frye's Motions to Seal, **GRANT** BH Media's Motion to Intervene, and direct the clerk to unseal Frye's Reply in Support of Motion to Intervene (the "Reply"), ECF No. 43, and the attached nineteen exhibits (the "Exhibits").

### I.    Background

On April 30, 2018, the government filed a motion to disclose Giglio material in fifty-five related cases. E.g., Mot. Voluntary Disclosure Grand Jury Other Materials Pursuant to

---

[1] Unless otherwise specified, all cites to "ECF No." refer to United States v. Keegan, 7:14-cr-00029-MFU (W.D. Va.).
[2] Frye filed identical motions to seal in all fifty-five related Giglio cases, which are listed in the court's May 3, 2018 Order. See Order, ECF No. 34, at 3–5. BH Media only filed its Motion to Intervene in United States v. Keegan, 7:14-cr-00029-MFU (W.D. Va.). Because BH Media's opposition to the Motions to Seal applies equally to all fifty-five motions to seal, the court construes BH Media as opposing Frye's motions to seal in all fifty-five cases. In any event, because the court will deny the Motions to Seal, the information contained in the Motions to Seal will become public.

Brady and Giglio, ECF No. 32. Frye, a detective with the Town of Vinton Police Department, formerly a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and referenced in the Giglio material, moved to intervene and block the disclosure of the Giglio material in the fifty-five cases. E.g., Mot. Intervene, ECF No. 33.

The court ultimately denied Frye's motions to intervene. Order ("Intervention Order"), ECF No. 55. The court held that "Frye's request [was] unprecedented" because Frye could point to no authority suggesting that a government witness could intervene as an interested party in a criminal case. Id. at 2. Instead, the court held that disclosure of potential Giglio material was firmly in the prosecutor's purview. Id. at 2.

At issue here is Frye's Reply to his motion to intervene. Late in the evening on May 14, 2018, Frye filed his Reply along with the Exhibits, each of which contains either Giglio material or material that Frye claims is "extremely sensitive, prejudicial, and grossly inaccurate." Frye's Br. Supp. Mot. Seal Exhibits Attached His Reply Supp. Mot. Intervene ("Frye Br. Supp. Mot. Seal") at 2, United States v. Farrell, 7:12-cr-00058-MFU (W.D. Va. June 15, 2018), ECF No. 72; see Reply Exs. 1–19.[3] Moreover, Frye's twenty-eight page Reply cited extensively from the Exhibits.

When filing the Reply and Exhibits, Frye did not follow Local Rule 9, which governs the sealing of documents on the docket. Local Rule 9(b) requires that any party seeking to obtain a sealing order "must file an unsealed written motion containing" a generic description of the document to be sealed, the bases for sealing the document, and the

---

[3] After Frye filed the Reply on the Exhibits in United States v. Keegan, 7:14-cr-00029-MFU (W.D. Va.), the court ordered Frye to file the Reply brief—but not the Exhibits—on the docket of the remaining fifty-four cases. Order, ECF No. 46, at 2.

2

duration for sealing. W.D. Va. Gen. R. 9(b)(2). Additionally, "the moving party must also tender to the court, <u>in camera</u>, the document proposed to be sealed." <u>Id.</u>

Instead, Frye filed the Reply and the Exhibits directly on the docket, rather than <u>in camera</u> with the court. Frye contemporaneously filed the Motion to Seal Exhibits. Because Frye proceeded in this manner, his Reply and the Exhibits remained unsealed on the docket, where the public could view them. In the morning, approximately eight hours after Frye publicly filed the Reply, the Exhibits, and the Motion to Seal Exhibits, the court entered an order temporarily sealing the Exhibits until the Motion to Seal Exhibits could be addressed. Order, ECF No. 45.

On that same morning, Frye filed the Motion to Seal Reply, asking the court to seal the Reply itself. Frye's Mot. Seal Frye's Reply Supp. Mot. Intervene, ECF No. 47. At argument on May 16, 2018, Frye to a large degree backed off this motion. Frye represented to the court that if it wanted to unseal the Reply, Frye thinks that would be satisfactory. While the court indicated at argument that it would unseal the Reply, the Reply remains sealed on the docket.

## II. BH Media's Motion to Intervene

While the court denied Frye's motion to intervene, <u>see</u> Intervention Order 3, BH Media's Motion to Intervene finds itself on far stronger legal footing. At the threshold, Local Rule 9 allows "[a]ny person or entity, whether a party or not, [to] object to a motion to seal a document." W.D. Va. Gen. R. 9(b)(4). Local Rule 9 thus allows BH Media to oppose Frye's Motions to Seal, irrespective of BH Media's status as a party or nonparty in these cases.

Moreover, media outlets "unquestionably have standing to challenge access to court documents." United States v. James, 663 F. Supp. 2d 1018, 1020 (W.D. Wash. 2009); see also Doe v. Pub. Citizen, 749 F.3d 246, 262 (4th Cir. 2014) ("This Court has previously permitted news organizations to intervene in actions in which they were not otherwise parties to challenge a district court's sealing order."). This is because "[p]ublic access to judicial proceedings is consistent with the 'First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny.'" United States v. Adams, 788 F.3d 115, 116 (4th Cir. 2015) (quoting Doe, 749 F.3d at 265).

With both Local Rule 9 and the case law in mind, the court holds that BH Media has standing to oppose Frye's Motions to Seal. Accordingly, the court will grant BH Media's Motion to Intervene.

### III.  Frye's Standing to File the Motions to Seal

The Federal Public Defender (the "FPD") raises a threshold argument: Because the court has already denied Frye's motion to intervene, the FPD argues that Frye "does not have standing to seek to control or influence the presumptively public docket in these 55 cases." FPD's Opp. Frye's Mot. Seal, ECF No. 59, at 1.

Superficially, Local Rule 9 provides some support for the FPD's argument. Local Rule 9 states: "To obtain a sealing order a party must file an unsealed written motion." W.D. Va. Gen. R. 9(b)(2). Because Frye's motion to intervene was denied and he is not a party, Local Rule 9 suggests that Frye has no standing to prosecute his Motions to Seal.

The court believes this reading of Local Rule 9 is too narrow, however. The court finds it legally untenable that someone could tender a brief and exhibits to the court and yet

4

not have standing to ask the court to seal the same brief and exhibits. Instead, the court holds that Frye has standing to move to seal the Reply and Exhibits. Cf. J.S. Filter/JWI, Inc. v. J-Parts, LLC, No. 5:03-CV-127, 2017 WL 3574785, at *5 (W.D. Mich. Aug. 18, 2017) (holding party had standing to prosecute a motion to seal related to a consent agreement even though the party did not have standing to enforce the consent agreement).

### IV. Motions to Seal

Nonetheless, Frye has not overcome the presumption that the public has a right of access to the Reply and Exhibits. "It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." Doe, 749 F.3d at 265. The qualified right of access creates a presumption that the public should have access to these documents and records. See id. The right of public access can arise both out of the common law and the First Amendment.

The common law presumption of access extends to all judicial documents and records in a proceeding, but "can be rebutted if countervailing interests heavily outweigh the public interests in access." Rushford v. New Yorker Magazine, 846 F.2d 249, 253 (4th Cir. 1988). "The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." Id. Unlike the common law, "the First Amendment provides a right of access only to particular judicial records and documents, and this right yields only in the existence of a 'compelling governmental interest . . . [that is] narrowly tailored to serve that interest." In re Application of U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D), 707 F.3d 283, 290 (4th Cir. 2013) (alterations in original) (quoting Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 575 (4th Cir. 2004)). In

5

either case, Frye, as the party seeking to overcome the presumption that the Reply and Exhibits should be accessible to the public, bears the burden of showing some significant interest that outweighs the presumption." Rushford, 846 F.2d at 253.

### A. Judicial Document or Record

At the threshold, the court must decide if the Reply and Exhibits constitute a "judicial document or record." The Fourth Circuit has held that "documents filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." In re Application, 707 F.3d at 290. Under this definition, it is clear that the Reply and Exhibits constitute part of the judicial record. The Reply is a document filed "with the objective of obtaining judicial action"—namely, in support of his motion to intervene in the fifty-five cases. Cf. id. at 291 (holding that "derivative § 2703(d) motions are 'judicial records' because they were filed with the objective of obtaining judicial action or relief pertaining to § 2703(d) orders"). Similarly, the Exhibits were filed in further support of Frye's Reply.

The court's conclusion is supported by the Third Circuit's decision in United States v. Wecht, 484 F.3d 194 (3d Cir. 2007). In Wecht, the district court initially allowed the government to file certain Brady and Giglio materials under seal, but, after media outlets intervened, later unsealed the materials. Id. at 207. The government appealed, arguing that the Brady and Giglio materials were not a judicial document or record.[4] In particular, the government argued that the Brady and Giglio materials were "discovery materials that cannot be subject to the common law right of access." Id. at 208.

---

[4] The government conceded that, if the Brady and Giglio materials were a judicial document or record, the government "has failed to justify precluding the court from disclosing the information." Wecht, 484 F.3d at 208.

6

The Third Circuit rejected the government's position. While the "government [was] correct that Brady materials are like discovery," which is generally not subject to a common law right of access, "obligations under Brady are governed not by rules of procedure but by the Constitution." Id. at 209. With this in mind, the Third Circuit held that the Brady and Giglio materials were judicial documents or records, triggering a common law right of access to those materials.

The Third Circuit identified five reasons supporting its holding that the public had a common law right of access to the Brady and Giglio materials. First, the Brady and Giglio materials were filed with a motion for in camera review, "which 'clearly establishes' them as judicial records." Id. (quoting Goldstein v. Forbes (In re Cendant Corp.), 260 F.3d 183, 192 (3d Cir. 2001)). Second, the district court determined that the Brady and Giglio materials "must be disclosed to the defense as possible impeachment evidence," and "[p]ublic access to judicial determinations 'provid[es] the public with a more complete understanding of the judicial system,' and 'promotes the public perception of fairness.'" Id. at 209–10 (last alteration in original) (quoting United States v. Criden, 675 F.2d 550, 556 (3d Cir. 1982)). Third, "the process by which the government investigates and prosecutes its citizens is an important matter of public concern." Id. at 210. Fourth, because "[t]he records concern the conduct of an FBI official who played a prominent role in a highly publicized investigation of a well-known defendant," the documents at issue "are of significant interest to the public." Id. Fifth, the records were relevant to the defendant's suppression motion. Id.

The court finds Wecht's reasoning to be persuasive. Accordingly, the court holds that the Reply and Exhibits are judicial documents and records.

7

### B. A Right of Access Exists

The Fourth Circuit next requires the court to "determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." Doe, 749 F.3d at 266 (quoting Va. Dep't of State Police, 386 F.3d at 576). To determine if the First Amendment right of access applies, the court must "employ the 'experience and logic' test, asking: (1) whether the place and process have historically been open to the press and general public, and (2) whether public access plays a significant positive role in the functioning of the particular process in question." In re Application, 707 F.3d at 283 (internal quotations omitted) (quoting Balt. Sun Co. v. Goetz, 886 F.2d 60, 64 (4th Cir. 1989)). Both prongs must be satisfied for the First Amendment to govern the public right's of access. See id.

The various parties disagree over whether the Reply and Exhibits satisfy the experience and logic test. Frye assumes—without any argument—that only the common law right of access applies. See Frye Br. Supp. Mot. Seal 1 (citing the Public Citizen standard for rebutting the common law presumption). The government agrees, arguing that "criminal discovery is not an area historically open to the public and press."[5] Gov'ts Br. Opp. Mot. Seal Exhibits, ECF No. 60, at 4 n.1. Nonetheless, the government recognized that the court could hold that the Reply and Exhibits "should be construed primarily only as documents necessary for the adjudication of [Frye's] Motion to Intervene," which would trigger a First Amendment right of access. Id. at 5 n.1.

---

[5] The court notes that while criminal discovery might not be an area historically open to the public and the press, that broad rubric changes when a court determines that records "must be disclosed to the defense as possible impeachment evidence." Wecht, 484 F.3d at 209.

8

BH Media disagrees. BH Media first contends "motions to intervene are the preferred procedural mechanism for non-parties to vindicate the public's right of access." BH Media Mot. Intervene 6. Moreover, public "access to motions to intervene helps the public understand the reviewing court's ruling and . . . helps legitimize the decision." Id. at 7. BH Media contends that "[t]his positive role of access is all the more significant in this case, where a third-party claims his participation is necessary to curb alleged governmental abuses of power that could have far-reaching consequences that directly affect the public." Id.

The Federal Public Defender (the "FPD") also argues that the First Amendment applies, but on different grounds. The FPD ties the First Amendment right of access in with "a defendant's Sixth Amendment right to a public trial," contending that "the motion to seal should be denied on the ground that doing so would unduly infringe on the defendants' constitutional right to public proceedings." FPD's Opp. Frye's Mot. Seal, ECF No. 59, at 2.

Ultimately, the court agrees with the government: The court need not decide which right of access applies, because even if the common law right of access applies, Frye has failed to overcome the presumption of access by showing that countervailing interests heavily outweigh the public interests in access. See Doe, 749 F.3d at 265; Wecht, 484 F.3d at 208 n.19 ("Because we find that a common law right of access attaches to the Orsini records, we need not engage in the First Amendment analysis."); accord Gulf Oil Co. v. Bernard, 452 U.S. 88, 99 (1981) ("[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for the decision."). Notably, the court holds that there is a common law right of access to the Exhibits both as disclosed Giglio materials and as

materials submitted in support of Frye's motion to intervene, and to the Reply as materials submitted in support of Frye's motion to intervene.

The court finds the analysis in Wecht particularly persuasive here. Because the Reply and Exhibits are judicial records, it necessarily follows that a common law right of access applies. That common law right of access is especially strong in criminal cases, because "the process by which the government investigates and prosecutes its citizens is an important matter of public concern." Wecht, 484 F.3d at 210. Indeed, the fact that certain records in the Exhibits constitute Giglio material places them squarely in the universe of the common law right of access. See id. at 209–10. The right of access is also especially strong because the underlying allegations concern the conduct of a law enforcement officer involved in numerous federal investigations. Cf. id. at 210.

Moreover, the Reply and Exhibits are not just relevant as Giglio material: They also bear directly on Frye's motion to intervene. Indeed, it is crucial to remember that Frye—and not the government—filed Frye's motion to intervene. It is Frye who originally filed the Reply and Exhibits—publicly, and not under seal—on the docket. And it is Frye who quotes and cites the Exhibits extensively in his twenty-eight page Reply. The public has a common law right of access to judicial documents and records attendant to the adjudication of Frye's motion to intervene, including the Reply and Exhibits. See id. at 210 (finding that a ruling sealing documents related to a motion "would have constituted yet another important judicial decision that the public would have had an interest in evaluating").

### C. Frye's Countervailing Interests Do Not Heavily Outweigh the Public Interests

Frye attempts to establish two countervailing interests with respect to the Exhibits: (1) employee files qualify for protection from disclosure, especially when the employee is "not [a] part[y] to the action and did not seek to share their private information in a public forum"; and (2) the Exhibits either exonerate Frye or "contain wholly false allegations." Frye Br. Supp. Mot. Seal 1–2. Neither satisfies Frye's burden.

As a threshold matter, Frye does not attempt to identify any countervailing interest sufficient to overcome the public's right of access to the Reply itself; by Frye's own admission, the countervailing interests only apply to the Exhibits. Accordingly, the court holds that the Frye has not demonstrated a countervailing interest with respect to the Reply and will order that the Reply be unsealed.

With respect to the Exhibits, Frye first argues that "courts have found that the contents of employee files do qualify for protection from disclosure outside the purposes of litigation," especially "where the subjects of such personnel files are not parties to the action and did not seek to share their private information in a public forum." Id. Frye ignores that in these cases, the personnel files belonged to individuals not involved in the underlying disputes. See Guessford v. Pa. Nat'l Mut. Caus. Ins. Co., 1:12CV260, 2014 WL 12594127, at *6 (M.D.N.C. Sept. 30, 2014) (listing personnel files as belonging to defendant's nonparty employees); Nettles v. Farmers Ins. Exch., No. C06-5164RJB, 2007 WL 858060, at *1–2 (W.D. Wash. Mar. 16, 2017) (recommending sealing of personnel files "of individuals who are not parties to this action" and "of third parties"). Frye, of course, is the subject of the

Giglio disclosures, and directly injected the Exhibits into this proceeding and the public record.

Frye also ignores that Guessford held that a court should be more willing to seal personnel files when "the contents of the files are not directly at issue in the case." Guessford, 2014 WL 12594127, at *4. The opposite factual situation is true here: In Frye's Reply, he injected the Exhibits into the dispute. As the court held above, the Exhibits implicate the public's right to view documents attendant to Frye's motion to intervene. Wecht, 484 F.3d at 210.

Finally, and most determinative, Guessford explicitly distinguishes between personnel files in civil cases—like the cases Frye cites—and criminal cases. Specifically, Guessford cites Wecht for the proposition that "potential impeachment relevant to a criminal trial is 'is distinguish[able] . . . from traditional civil discovery between private parties' when it comes to motions to seal." Guessford, 2014 WL 12594127, at *4 (alterations in original) (quoting Wecht, 484 F.3d at 209–10). The facts in Guessford fell into the latter category: traditional civil discovery between private parties. The facts here fall into the former category: potential impeachment relevant to a criminal trial.

Ultimately, Guessford suggests—and the court holds—that the usual reticence of courts to unseal personnel files does not apply when those files are the very documents at issue in a Giglio disclosure. Moreover, the court holds that the Exhibits are directly relevant to the adjudication of Frye's motion to intervene. Guessford and Nettles are inapposite to the facts before the court. Accordingly, the court finds that Frye has failed to demonstrate

12

that the fact that the Exhibits include his personnel files is a countervailing interest that heavily outweighs the public's right of access to the Exhibits.

Next, Frye suggests that the Exhibits should remain sealed because they "include extremely sensitive, prejudicial, and grossly inaccurate allegations about Detective Frye's professional career." Frye Br. Supp. Mot. Seal 2. In particular, Frye contends that the Exhibits contain "complaints or internal investigations [that] exonerated Detective Frye," while others "are communications [that] reference or discuss the same or [that] contain wholly false allegations." Id.

Frye's sole support for his argument is United States v. Jones, No. 96-2061, 1998 WL 4355, 133 F.3d 933 (10th Cir. Jan. 8, 1998) (per curiam), an unpublished decision out of the Tenth Circuit. But Jones considered an entirely separate issue: whether the trial court abused its discretion by "impermissibly restrict[ing] [the defendant's] cross-examination of [a detective] . . . regarding a police department investigation [that] cleared him of alleged mishandling of money seized during the execution of a search warrant." Id. at *1. The district court ultimately ruled that under Federal Rule of Evidence 403, "the proffered evidence was substantially more prejudicial than probative and could lead to confusion of the issues." Id. The Tenth Circuit affirmed, holding that the trial court did not abuse its discretion; as the detective "was cleared of prior wrongdoing, any connection between the investigation and his propensity for truthfulness is tenuous at best." Id.

Whether the Exhibits would satisfy Rule 403 at trial is beyond the purview of Frye's Motions to Seal. If the Exhibits were to be raised as impeachment material at trial, the court would then determine if they were admissible under Rule 403. Cf. United States v. Phibbs,

13

999 F.2d 1053, 1070 (6th Cir. 1993) (affirming court's Rule 403 determination in similar circumstances to Jones only after "review[ing] the transcript of the hearing and the sealed materials in the record").

But Rule 403 admissibility is not at issue here. Instead, what is at issue is whether Frye's claim that the Exhibits contain sensitive, prejudicial, and erroneous information is a countervailing interest that heavily outweighs the public's interest in having access to the Exhibits. Again, the court is guided by Wecht. The records at issue in Wecht were the personnel files of an FBI agent accused of falsifying certain documents in a criminal investigation. Wecht, 484 F.3d at 199. Notably, the trial court granted media outlets' motion to unseal the records unsealed "[e]ven though the material is quite likely irrelevant and not admissible at trial." Id. at 200 (alteration in original). The Third Circuit also recognized that the records' "probative value . . . is open to debate." Id. at 210. But the Third Circuit found that the probative value of the records was irrelevant to its determination that a common law public right of access to the records existed. See id.

The facts here are similar to Wecht. Given the fact that the Exhibits are the subject of the government's Giglio disclosure, the court cannot conclude that Frye's concerns over the questionable probative value of the Exhibits heavily outweighs the public's right of access. The court agrees with the analysis of the Third Circuit in Wecht that probative value of the Exhibits is not relevant to whether the Exhibits should remain sealed. At the end of the day, the public has the right to access to Exhibits as Frye tendered them in support of his motion to intervene.

## V. Conclusion

The public has a common law right of access to the Reply and Exhibits. Frye has failed to identify a countervailing interest that heavily outweighs the public's interest in access to the Reply and Exhibits. Accordingly, Frye's Motions to Seal will be **DENIED**.

Entered: July 23, 2018

/s/ Michael F. Urbanski
Michael F. Urbanski
Chief United States District Judge